UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(*Electronically Filed*)

| | |
|---|---|
| DERRICK STEELE, ) <br> 50 Oakland Lane ) <br> Harrodsburg, KY 40330 ) <br> and ) <br> ) <br> JAMIE BOTTOM ) <br> 332 Robinson Roe Rd. ) <br> Harrodsburg, KY 20330 ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> ) <br> CITY OF HARRODSBURG, KENTUCKY, ) <br> 208 S. Main St., Harrodsburg, KY 40330 ) <br> ) <br> BOARD OF COMMISSIONERS OF ) <br>   HARRODSBURG, KENTUCKY, ) <br> ) <br> MAYOR SCOTT MOSELEY, ) <br> ) <br> COMMISSIONER KERRY ANNESS, ) <br> ) <br> COMMISSIONER MARVIN ISHAM, ) <br> ) <br> COMMISSIONER CHARLIE MATTINGLY, ) <br> ) <br> and ) <br> ) <br> COMMISSIONER MISSY BANKS ) <br> 208 South Main Street, ) <br> Harrodsburg, Kentucky 40330 ) <br> ) <br> ) <br> Defendants. ) | Case No. _____ <br><br><br><br> Jury Trial Demanded <br><br><br><br><br><br> **COMPLAINT** |

Plaintiffs Derrick Steele and Jamie Bottom, former fire fighters employed by the City of

Harrodsburg, Kentucky, by and through their undersigned counsel, hereby state as follows:

## INTRODUCTION, JURISDICTION, AND VENUE

1. This is a civil action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, reinstatement, money damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution.

2. This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested monetary damages pursuant to 28 U.S.C. § 1343 and costs and attorneys' fees under 42 U.S.C. § 1988, as well as to issue a declaratory judgment and other just and appropriate relief pursuant to 28 U.S.C. §§ 2201-02.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all Defendants are located in this district, and the events complained of herein took place in the Lexington Docket.

## PARTIES

4. Prior to his unlawful termination, Plaintiff Derrick Steele was employed by the City of Harrodsburg, KY as a Captain with the Harrodsburg Fire Department ("HFD"). Plaintiff served in that position for 15 years. Mr. Steele resides at 50 Oakland Lane, Harrodsburg, KY 40330. He is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983, and a "person" within the meaning of 42 U.S.C. § 1983.

5. Prior to his unlawful termination, Plaintiff Jamie Bottom was employed by the City of Harrodsburg, KY as a Lieutenant with the Harrodsburg Fire Department ("HFD"). Plaintiff served in that position for approximately 4 years. Mr. Bottom resides at 332 Robinson Roe Road, Harrodsburg, KY 40330. He is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983, and a "person" within the meaning of 42 U.S.C. § 1983.

6. Defendant City of Harrodsburg is considered a "home-rule" city and is the "seat" of Mercer County, Kentucky with a main business address of 208 South Main Street, Harrodsburg, Kentucky 40330. The City of Harrodsburg is a "person" within the meaning of 42 U.S.C. § 1983. Harrodsburg is operated by an elected City Commission comprised of five city commissioners, one of whom serves as the mayor. Each commissioner is responsible for assigned areas of the City's operations.

7. Defendant Scott Moseley is the Mayor of Harrodsburg and a member of the Harrodsburg Board of Commissioners. In his role as the Mayor of Harrodsburg and a member of the Harrodsburg Board of Commissioners Defendant Moseley is a public official. Defendant Moseley operates out of offices located at 208 South Main Street, Harrodsburg, Kentucky 40330. He is a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring suit against Defendant Moseley in his individual capacity.

8. Defendant Kerry Anness is a member of the Harrodsburg Board of Commissioners. In her role as a member of the Harrodsburg Board of Commissioners, Defendant Anness is a public official. Defendant Anness operates out of offices located at 208 South Main Street, Harrodsburg, Kentucky 40330. She is a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring suit against Defendant Anness in her individual capacity.

9. Defendant Marvin Isham is the Mayor Pro Tempore of Harrodsburg and a member of the Harrodsburg Board of Commissioners. In his role as a member of the Harrodsburg Board of Commissioners, Defendant Isham is a public official. Defendant Isham operates out of offices located at 208 South Main Street, Harrodsburg, Kentucky 40330. He is a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring suit against Defendant Isham in his individual capacity.

10. Defendant Charlie Mattingly is a member of the Harrodsburg Board of Commissioners. In his role as a member of the Harrodsburg Board of Commissioners Defendant Mattingly is a public official. Defendant Mattingly operates out of offices located at 208 South Main Street, Harrodsburg, Kentucky 40330. He is a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring suit against Defendant Mattingly in his individual capacity.

11. Defendant Missy Banks is a member of the Harrodsburg Board of Commissioners. Commissioner Banks is assigned responsibility for serving as the commissioner overseeing the operations of Harrodsburg police and fire departments. In her role as a member of the Harrodsburg Board of Commissioners, Defendant Banks is a public official. Defendant Banks operates out of offices located at 208 South Main Street, Harrodsburg, Kentucky 40330. She is a "person" within the meaning of 42 U.S.C. § 1983. Plaintiffs bring suit against Defendant Banks in her individual capacity.

**FACTUAL BACKGROUND**

12. Until his termination on April 5, 2023, Plaintiff Derrick Steele served as a Captain with the Harrodsburg Fire Department. At the time of his termination and presently, Plaintiff Steele also serves as the President of Local 5418 of the International Association of Fire Fighters ("IAFF Local 5418" or "Union"). Over the course of his 15-year career with HFD served as a fire instructor within the Department, as well as an EMS instructor and a CPR instructor. Captain Bottom received two lifesaving awards for saving a man suffering a severe diabetic emergency and for rescuing an infant from a burning building. In addition, Captain Bottom worked with the American Red Cross to install smoke detectors in homes for free. Over the course of his career, he was also responsible for medical supplies and ordering for the HFD and wrote a number of grants from HFD, leading to the award of five (5) grants to the HFD.

4

13. Until his termination on April 5, 2023, Plaintiff Jamie Bottom served as a Lieutenant with the Harrodsburg Fire Department. At the time of his termination and presently, Plaintiff Bottom also serves as the Secretary Treasurer of IAFF Local 5418. While employed by HFD during the Covid-19 pandemic, Lieutenant Bottom worked the most overtime hours of any fire fighter with HFD in 2020, including at times working five (5) days in a row with little relief. In 2021, Lieutenant Bottom worked the second most overtime of all fire fighters, while also responding to more calls than all but one colleague. This pattern continued into 2022 with Lieutenant Bottom making 237 runs – the most in the Department.

14. In late December 2022 and into early January 2023, Steele and Bottom began meeting with the Kentucky Professional Fire Fighters Association ("KPFF"), an IAFF state affiliate, to discuss the possibility of Harrodsburg fire fighters organizing into a union and joining the IAFF. The following month, having garnered the support of the overwhelming majority of their fellow employees, Steele and Bottom began the process of formally joining the Union.

15. On February 7, as a showing of good faith, Steele and Bottom contacted Fire Commissioner Missy Banks to advise her of the Harrodsburg fire fighters' intent to join the Union. During this conversation, Steele and Bottom discussed with Commissioner Banks the various issues facing the Harrodsburg Fire Department – namely, chronically low staffing levels, the lack of adequate training among the employees, and budgetary problems – and explained that joining the IAFF would benefit both employees of the Department and the City itself. Importantly, Steele and Bottom explained that the issues facing the Department were a matter of public safety and that joining the IAFF would provide Harrodsburg fire fighters with access to free safety training opportunities.

5

16. Commissioner Banks appeared receptive to Steele's and Bottom's comments regarding the mutual benefits of the Department employees' union effort. Nonetheless, during their February 7 meeting, Steele and Bottom also emphasized that they wished to bring their intention to join the Union before the City Commission to avoid the appearance that they were acting behind the backs of the Commission. As such, they asked for Commissioner Banks' permission to address the Commission at its next meeting—permission which Banks enthusiastically granted.

17. Unfortunately, despite the initial positive response they received from Commissioner Banks, Steele's and Bottom's union effort was swiftly met with animosity. Although they had received Commissioner Banks' blessing to speak at the Commission meeting, when Steele and Bottom sought to be added to the meeting agenda, the City Clerk and City Attorney refused to allow them to speak.

18. When Steele and Bottom sought the assistance of the Mayor Pro Tempore and raised the public safety issues in the Department necessitating the forming of a union, he responded that he was "not a fan of unions" and did not address Steele's and Bottom's concerns about the resistance to their speaking at the Commission meeting. Sensing the hostility from numerous City officials, Steele and Bottom withdrew their effort to speak at the meeting.

19. The Harrodsburg fire fighters ultimately succeeded in organizing with the IAFF and forming Local 5418 effective March 1, 2023. In doing so, they were met with yet further anti-union sentiment from City officials.

20. Shortly thereafter, Mayor Scott Moseley began what can only be described as a witch hunt against the Union in general and newly-elected Local 5418 President Steele and Secretary Treasurer Bottom in particular. In a meeting with the Assistant Fire Chief of the

Department (himself a member of Local 5418), Mayor Moseley asked whether the Assistant Chief was a union member and expressed anger at having not been directly told about the union effort.

21. Further, under the guise of needing to address alleged errors affecting several fire fighters' tax withholding status, Mayor Moseley and HR employee Shelby Lewis met with those fire fighters and interrogated them about the Union and whether or not Steele or Bottom pressured or hazed them into joining. The topic of these fire fighters' tax documents was never raised in these meetings; instead, it is clear that the City used the meetings to attempt to conjure up a pretext to terminate Steele and Bottom.

22. Steele and Bottom, **despite having no disciplinary record**, were both terminated from their positions on March 13, 2023. Neither Steele nor Bottom received a written termination notice, and when they questioned City officials about the reason for their terminations, they were given the conclusory answer that they were terminated "for cause." When Steele and Bottom pressed further and sought an explanation as to what "cause" justified their termination, City officials deflected to the City Attorney, who remarked that she did not have to tell them.

23. Even after terminating Steele and Bottom, the City continued to express anti-union animus. On March 16, Local 5418 published a post on its Facebook page informing members of the Harrodsburg community that due to low staffing levels and only three fire fighters being on duty, Station 2 was to be closed for the foreseeable future. The post explained that the closing of a fire station posed a detriment to the safety of Harrodsburg fire fighters and citizens of the City. Later that morning, Mayor Moseley called Joe Baer, the President of KPFF, to inquire about the post and expressed his alarm that President Baer supported Local 5418's decision to publish the post.

24. After being terminated with no written notice and no pre-termination hearing, counsel for Plaintiffs contacted Defendants by letter dated March 22, 2023 to object to their unlawful conduct and demand immediate reinstatement and back pay. (A copy of this letter is attached hereto as Exhibit A.)

25. Thereafter, in a letter dated March 27, 2023, Defendants informed Plaintiffs that their employment was reinstated, but that they both were immediately suspended from their duties with pay. (A copy of this letter is attached as Exhibit B.)

26. Defendants' March 27th suspension letter also included "a written statement of facts that led to the Board's [initial] termination of employment of Lieutenant Jamie Bottom and Captain Derrick Steele." The allegations the City included in its March 27th letter are demonstrably false and were made with actual malice by Defendants for the improper purpose of retaliating against Plaintiffs for exercising their First Amendments rights of freedom of speech and association. Moreover, Defendants made these written allegations with reckless disregard for the truth of these claims and did so to injure Plaintiffs' reputations, including to do harm to their ability to secure gainful employment in the future. Defendants also relied on these demonstrably false allegations as the basis for their wrongful terminations of Plaintiffs. Plaintiffs were damaged as a result of Defendants' reckless and malicious actions.

27. Defendants' March 27th suspension letter concluded by informing Plaintiffs that each would be "provided with the opportunity to respond to the foregoing facts" at a special meeting of the City's Board of Commissioners scheduled for April 4, 2023.

28. At the April 4, 2023 special meeting of the City's Board of Commissioners, which was open to the public, the factual allegations contained in the City's March 27th suspension letter were read into the public record by the City's Attorney. Plaintiffs' March 22, 2023 letter to the

8

City was also included as part of the public record. The allegations Defendants read into the public record at the April 4th meeting are demonstrably false and were made with actual malice by Defendants for the improper purpose of retaliating against Plaintiffs for exercising their First Amendment rights of freedom of speech and association. Moreover, Defendants made these public statements with reckless disregard for the truth of these claims and did so to injure Plaintiffs' reputations, including to do harm to their ability to secure gainful employment in the future. Defendants also relied on these demonstrably false allegations as the cause for their wrongful terminations of Plaintiffs. Plaintiffs were damaged as a result of Defendants' reckless and malicious actions. They suffered serious emotional and mental distress as a result of the defamatory comments. In addition, Plaintiffs' professional and personal reputations were severely damaged in the community as a result of the defamatory statements made by Defendants.

29.  Captain Bottom and Lieutenant Steele both spoke at the April 4th Board of Commissioners' meeting. Both denied all the allegations made against them in the City's March 27th suspension letter. Defendants did not present any witnesses to support or corroborate the allegations it relied on to suspend Plaintiffs. Defendants did not present additional evidence or allegations against either Plaintiff except for the allegations made in its March 27th letter.

30.  The City Commissioners went into executive session after Captain Bottom responded to the City's allegations without asking him any questions. The City Commissioners returned out of executive session after about 10 minutes. A motion was made to terminate Captain Bottom. The motion was seconded and unanimously passed by the City Commissioners with no further discussion or explanation.

31.  The City Commissioners went into executive session after Lieutenant Steele responded to the City's allegations without asking him any questions. The City Commissioners

returned out of executive session after about 10 minutes. A motion was made to terminate Lieutenant Steele. The motion was seconded and unanimously passed by the City Commissioners with no further discussion or explanation.

32. Pursuant to the City's personnel policies and procedures, the City Commission, as a collective body, is vested with final decision-making authority with respect to the termination of City employees.

33. By letters dated April 5, 2023, the City confirmed its termination decision against both Lieutenant Steele and Captain Bottom with no further explanation or opportunity to challenge its decision. (Copies of these letters are attached as Exhibit C.)

34. Since the City's original termination of the Plaintiffs, four individuals who had joined the Union have since requested to withdraw their membership. One of those individuals specifically informed Plaintiffs that he was a new parent and was concerned he would lose his job if he continued his membership with the Union.

### Count I – Violation of Plaintiff's Rights to Free Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983) – All Defendants

35. Plaintiffs reallege and incorporate Paragraphs 1 through 34 of their Complaint.

36. The rights of Plaintiffs to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendment of the U.S. Constitution. The public has a vital interest in free and open discussion on issues of public importance.

37. It is a violation of the First and Fourteenth Amendments of the U.S. Constitution for public employers, including the City of Harrodsburg through Defendants, to discriminate against, discipline, or discharge its employees in retaliation for engaging in speech about matters of public concern as private citizens.

38. Plaintiffs' speech and conduct was in support of matters of public concern, such as their comments that their Union and organizing efforts related to improving public safety, adequate training of fire fighters and the benefits that the City and its citizens would enjoy through the organizing of its fire fighters. As such, Plaintiffs' speech and conduct is protected by the First and Fourteenth Amendments.

39. The reasons provided by Defendants for their suspension and termination decisions were wholly false, had no basis in fact, were not supported by any competent evidence and were entirely pretextual. Defendants, acting individually and/or jointly, suspended and terminated Plaintiffs based on their speech and conduct in support of the Union and their organizing efforts of the Harrodsburg Fire Department. In so doing, Defendants discriminated against, disciplined, and discharged Plaintiffs in retaliation for engaging in protected speech activity.

40. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a deprivation of their constitutionally protected rights, economic injury, and irreparable harm.

41. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42. The City Commission, which collectively acted to terminate Plaintiffs' employment, is the final decision-making authority with respect to the termination of City employees. As such, Defendants are fully liable to Plaintiffs for their injuries resulting from

11

Defendants retaliating against and terminating them in violation of the First and Fourteenth Amendments.

43. Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### Count II – Violation of Plaintiff's Freedom of Association Under the First and Fourteenth Amendments (42 U.S.C. § 1983) - All Defendants

44. Plaintiffs reallege and incorporate Paragraphs 1 through 43 of their Complaint.

45. The right of Plaintiffs to freely associate with a labor organization such as IAFF Local 5418 is protected by the First and Fourteenth Amendments of the U.S. Constitution. Specifically, the First and Fourteenth Amendments protect the right of a public employee to engage in union activity, including organizing and engaging in collective action. The public has a vital interest in such free association.

46. Employees organizing a labor union, participating and supporting a labor union, and engaging in collective action constitute activities that are protected by the First Amendment right to free association.

47. It is a violation of the First and Fourteenth Amendments of the U.S. Constitution for public employers, including the City of Harrodsburg through Defendants, to discriminate against, discipline, or discharge its employees for exercising their rights to free association.

48. At all relevant times, Plaintiff Steele was a member of, actively participated in, and served as the elected President of IAFF Local 5418, a labor organization of professional fire fighters. Plaintiff's right to so associate with IAFF Local 5418 and to seek to organize the Harrodsburg Fire Department is protected by the First and Fourteenth Amendments.

49. At all relevant times, Plaintiff Bottom was a member of, actively participated in, and served as the elected Secretary Treasurer of IAFF Local 5418, a labor organization of

professional fire fighters. Plaintiff's right to so associate with IAFF Local 5418 and to seek to organize the Harrodsburg Fire Department is protected by the First and Fourteenth Amendments.

50. Defendants knew that Plaintiffs had recently organized the Harrodsburg Fire Department, and Defendants discriminated against, suspended, and subsequently terminated Plaintiffs because of this conduct. The reasons provided by Defendants for their suspension and termination of Plaintiffs are false and pretextual.

51. By engaging in this conduct, Defendants retaliated against Plaintiffs for their free association activity in violation of the First and Fourteenth Amendment of the U.S. Constitution.

52. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a deprivation of their constitutionally protected rights, economic injury, and irreparable harm.

53. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

54. The City Commission, which collectively acted to terminate Plaintiffs' employment, is the final decision-making authority with respect to the termination of City employees. As such, Defendants are fully liable to Plaintiffs for their injuries resulting from Defendants retaliating against and terminating them in violation of the First and Fourteenth Amendments.

55. Defendants are also liable for Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT III – Defamation *per se* – All Defendants

56. Plaintiffs reallege and incorporate Paragraphs 1 through 55 of their Complaint.

57. The allegations contained in the March 27, 2023 letter Defendants sent to Plaintiffs contained defamatory statements concerning the reasons for their suspensions and subsequent terminations. These statements were made about Plaintiffs and were published, including at the April 4, 2023 special meeting of the City Commission. The defamatory statements were made with malice and with reckless disregard for the truth of these statements. The defamatory statements prejudiced and harmed Plaintiffs in their profession and, as such, are defamatory per se.

58. Plaintiffs were damaged as a result of Defendants' reckless and malicious defamatory statements. They suffered serious emotional and mental distress (including anxiety and depression) as a result of the defamatory comments. In addition, Plaintiffs' professional and personal reputations were severely damaged in the community as a result of the defamatory statements made by Defendants. Plaintiffs also suffered significant economic harm as a result of Defendants' defamatory statements.

### COUNT IV – Wrongful Termination in Violation of State Law – All Defendants

59. Plaintiffs reallege and incorporate Paragraphs 1 through 58 of their Complaint.

60. K.R.S. § 336.130 provides that "[e]mployees may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare." As such, § 336.130

evidences a fundamental and well-defined public policy against termination of an employee for the exercise of his or her right to participate in union activity, and, therefore, provides a public policy exception to the at-will rule.

61. Defendants terminated Plaintiffs' employment as a result of Plaintiffs' organizing a union and seeking to unionize the Harrodsburg Fire Department, using demonstrably false grounds as a pretext for retaliation.

62. Defendants' actions violate the public policy exception to the at-will doctrine, and therefore, Plaintiffs were terminated from their employment in violation of state law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Declare that Defendants violated Plaintiffs' Constitutional rights by unlawfully depriving Plaintiffs of their rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution;

2. Order Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful discipline issued to Plaintiffs;

3. Order a complete and accurate accounting of all the compensation and relief to which Plaintiffs are entitled;

4. Award Plaintiffs monetary damages in the form of backpay compensation, lost benefits, unpaid entitlements, plus prejudgment and post-judgment interest;

5. Award Plaintiffs compensatory damages for the violations of Plaintiffs' rights and the harm to their reputation, humiliation, emotional and mental anguish, and for other financial and consequential harm and injuries he has suffered as a result of Defendants' violative conduct;

6. Award Plaintiffs punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiffs' Constitutional rights;

7. Order Defendants to make an offer of reinstatement to Plaintiffs, retaining their rank – as Captain for Plaintiff Steele and as Lieutenant for Plaintiff Bottom, or in the alternative, award front pay;

8. Award reasonable attorneys' fees and costs to Plaintiffs; and

9. Grant all other relief that the Court deems just and appropriate.

**JURY DEMAND:  PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

Respectfully Submitted,

*/s/ Peter J. Jannace*
David O'Brien Suetholz
Peter J. Jannace
Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC
515 Park Avenue
Louisville, Kentucky 40208
(502) 636-4333
dave@hsglawgroup.com
peter@hsglawgroup.com

Mark J. Murphy (pro hac vice motion to be filed)
Tamara Imam (pro hac vice motion to be filed)
Mooney, Green, Saindon, Murphy
  & Welch, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C.  20036
202-783-0010
mmurphy@mooneygreen.com
timam@mooneygreen.com

*Counsel for Plaintiffs*